Good morning, Your Honors. May it please the Court, Paul Moore in McCracken, Stoneman, and Holsberry on behalf of the petitioner Unite Here Local 11. Your Honors, in 2006 the National Labor Relations Board found that the Smokehouse Restaurant had committed numerous violations of the National Labor Relations Act, including that it had unilaterally discontinued making contributions to a health and welfare fund mandated by the Collective Bargaining Agreement in effect. As a remedy for those violations of the Act, the Board ordered that on request of employment of the employees in the bargaining unit as established by the Collective Bargaining Agreement. It also ordered that the restaurant make employees whole for any losses they incurred as a result of the unilateral changes. The terms and conditions of employment of these employees included contributions to a health and welfare fund. And so retroactively restoring that term and condition of employment means that the employer was required to make back contributions to the health and welfare fund. That is the standard remedy in cases where an employer discontinues making health and welfare contributions. Sotomayor, except it wasn't recited in this case. That's correct, Your Honor. In this case, what was recited was that the employer would retroactively restore the terms and conditions of employment. Now, according to the Board, that means because it wasn't specifically mentioned that that includes health and welfare contributions, even though that's the standard remedy, and even though there are other cases, as the Board admits, in which it is not specifically mentioned health and welfare contributions, the Board's position is essentially that that term means nothing. There are no specific terms and conditions of employment that are mentioned in that remedial order. What is your view about the compliance meeting of the Board, the four-member Board? What troubles me about this case is it would seem that your argument would require that the Board be nothing more than simply a pass-through. They're not allowed to change anything. They have no power to interpret. Your argument seems to be that you would depend entirely on the first iteration without allowing the last iteration to have any impact. Where am I wrong? Well, I don't think you're correct, Judge O'Scanlan. Our position is that the interpretation that the Board gave to its 2006 order is entirely illogical and is an abuse of discretion. And certainly, even on compliance, when a Board is interpreting a previous order, it is required to follow its previous policies and it's required to give reasons that make sense for interpreting its order as it did. Well, then, what's the function of that Board, then? It's – I don't understand whether your argument relies on the fact that they have no power to change an original interpretation. That's what's sticking in my craw. Well, I think the main focus on compliance is determining in dollars and cents terms how much is owed. So that's the main focus on compliance. And the Board is correct that it may not revise its previous decision on what is included in the remedial order. But it was engaged in an act of interpretation, and our position is that that act of that are completely antithetical to the position that the Board has taken since 1969. Counsel, may I ask you, do you have a case requiring making the fund whole for the order did not include either a citation to Meriwether Optical or specific language requiring making the fund whole? Do you have a case that contains neither of those mentions? I don't think that there is a case meeting that specification, Your Honor. Isn't that what we have here? We do have that here, Your Honor, and our – our – And so I'm having trouble with your argument that the Board's interpretation is illogical when all of the other cases that have imposed the requirement have either had that citation to Meriwether Optical or a specific delineation of payment to the fund. So how is the Board's interpretation illogical if it doesn't meet those two criteria? Well, first of all, Your Honor, we have pointed out, and the Board admits, that there are past cases in which it has not specifically mentioned health and welfare contributions. Right. But in those cases, there has been, by implication, a reference by citation to the Meriwether Optical Company case. Yes. And we've also pointed out that there are cases where there haven't been that – that reference to the Meriwether Optical case. But in those cases, there's been a specific citation to the fund. That's why I ask you the question. Yes.  Or a citation to Meriwether Optical, which is shorthand for a reference to the fund. Let me give you the reasons, Your Honor, why this interpretation of the 2006 order was illogical. The first reason is that it ascribes no meaning to the term, retroactively restore the terms and conditions of employment. There is nothing in any of the Board's briefing explaining what that is supposed to mean. And according to the Board, the failure to specifically mention retroactively restore the health and welfare contributions means that that wasn't included in what the Board was ordering. But that would apply to any term and condition of employment. It doesn't mention wages. It doesn't mention any term or condition of employment specifically. So according to the Board, this was a nullity. The second reason why it's illogical is that, according to the Board, this the two parts of this 2006 order, retroactively restore terms and conditions of employment and make employees whole for losses incurred, have no separate meaning. They're one and the same. So again, that first part of the order, according to the Board, is a nullity. Under our interpretation, there are two things that are being ordered. The first is that there be restoration of the terms and conditions of employment, which the Board has repeatedly held in cases like this, includes contributions to a health and welfare fund. Except that I'm still having problems with your representation that the Board has repeatedly held this because it's not in the same context. That's the difficulty I'm having with your argument, that where the Board has held that the fund is entitled to a reimbursement. We have one of those two scenarios that we've discussed. Well, the context here was that there was an order remedying an unfair labor practice involving unilateral changes in terms and conditions of employment. An unclear order, hence the interpretation required. Well, Your Honor, we don't think it's unclear. It doesn't specifically mention health and welfare contributions, but there have been past orders that, as the Board admits, have not mentioned that either. But they had the citation to Meriwether. That's the missing, that's the problem I'm having. There were indicators in all of those cases that we don't have here. And I'm hard-pressed to say that the Board's interpretation was completely illogical in the absence of either of those indicators. Our position, Your Honor, is that it's illogical both because it describes no meaning to one part of its 2006 order. Second, that the rationale for interpreting the order as not including health and welfare contributions doesn't make sense in the context of what the Board was doing in 2006. The only unilateral change that it was remedying at that point was a failure to make contributions to a health and welfare fund. The standard remedy in that situation is ordering back contributions. That's in the NLRB. I agree that the order is unclear. Your Honor, I agree that the order does not specifically state make contributions to the health and welfare fund, but I also note, and the Board admits, that past orders from the Board, which have been understood to include that remedy, have not said so either. I also will point out that the rationales that were given by the Board interpreting the 2006 order were completely antithetical to its policy pronouncements in the past. It understood itself not to have ordered back contributions because it said, well, those are contributions to someone other than the employees. But the Board has held since 1969 that contributions to a health and welfare fund is contributions that's remedial for the employees. It guarantees the future viability of the fund. It also said that employees essentially only have an interest in the health care benefits that they're provided. But again, the Board has held since 1969 that employees have an interest in the future viability of the fund. You know, this was before us before. And it was sort of understood that this did include the payments to the fund. And then the employer argued to us, I guess, for the first time, that it didn't. Is that what happened? Your Honor, what happened in the first go-around when the 2006 order was affirmed was that the employer raised a number of arguments that was on the merits of the unfair labor practices. Raised a number of arguments about why it shouldn't have to make back contributions. That, for example, the collective bargaining agreement had changed or that it could make an argument that the parties would have reached impasse. And so it would have been able to unilaterally implement its own terms and conditions of employment. This Court said those arguments are not for us. Those are arguments that you can raise on compliance. But no one said this doesn't include any back contributions. The order doesn't include them. It was a challenge. It didn't address it one way or the other. Well, that issue wasn't before the Court. But there was certainly no understanding that this order, which mentions the terms and conditions of employment, which the Board has always understood to include contributions to health and welfare funds, somehow didn't include that remedy. Counsel, I have the order, the compliance order, three-to-one majority. It is very, very thorough analysis. You may not agree with the analysis, obviously. But in order for you to prevail, it seems to me you have to be able to persuade us that the Board had no other legal option other than to find your way. And that's where I'm stuck. Your Honor, I think that it's important that we're not talking about the Board making new policy. The Board, in this case, says that it wasn't making new policy. What we're talking about here is whether this interpretation of the 2006 order, and in particular, the reference in that order to restoring terms and conditions of employment, has any meaning at all. Under our interpretation, that reference has meaning. Under the Board's interpretation, that was a nullity. It had no meaning at all. And again, the reasons given by the Board for that choice, that choice to interpret the 2006 order, are completely their policy choices, their policy pronouncements that go against 40 years, 50 years of Board law. What I'm trying to understand is that when this case was before us before, the employer was arguing that the, I thought, made the argument that the order shouldn't include these payments. That's agreeing that it did. I think that's right. And we said, you're making that argument too late. You should do it before the Board. And then it went back, and we get this flip. I think what the Court was saying, Your Honor, was you're making that argument too early. Which is, it's going to go back to compliance. If you disagree about what should be put in here, then, you know, make an argument that the collective bargaining agreement would have changed and you would have stopped making these contributions. So the argument was legitimately before the Board? The argument that, specific arguments that were raised by Smokehouse the first go-around, had to do with, essentially, when the cutoff period should have been. They were essentially arguing, you know, okay, if we have to make contributions to the Health and Welfare Fund, then you should cut it off because we had already changed the collective bargaining agreement or we would have reached impasse at some point or what have you. But there was certainly no argument on anyone's side, and I don't think any understanding that the remedy that had been ordered didn't include the standard. But you're not arguing, are you, that the Board had no authority to interpret the agreement? Are you arguing that? That was the matter properly before the Board? We are certainly not arguing it didn't have authority to interpret the 2006 order. We are arguing that its interpretation of the 2006 order is illogical. It doesn't make sense of the terms. And it's inconsistent with the history of the proceedings. Right. But I thought the point you were trying to make was somehow that because this matter had been before this Court before, that there had been some kind of implication that should have bound the Board in its interpretation. Not bound the Board, no, Your Honor. That's not the argument. The argument is just that there was no recognition that first time around. And, in fact, there was affirmative argument that this would involve back contributions. All right. You've exceeded your time, counsel. We'll give you a minute for rebuttal. Thank you, Your Honor. Good morning, and may it please the Court. Joel Heller for the National Labor Relations Board. The Board has wide discretion to interpret the scope of its remedial orders. This Court has held as such. And given the language of the 2006 order       and to consider the scope of its remedial orders and to consider the scope of its remedial orders the Board reasonably concluded that the order did not include back payments to the welfare fund. There's no express language in the order mentioning the welfare fund. And that is in stark contrast to the Board's typical practice where there is, in addition to general language such as make whole relief, there is included an express reference to making back payments to a welfare fund. For example, the phrase that Local 11 emphasizes here, retroactively restore terms and conditions of employment. But there are cases the one cited in our brief, the one cited in Local 11's brief where the Board has required back payments to a fund, has used that retroactively restore language, but then has also made express references to the specific remedy here. It would say, for example, retroactively restore terms and conditions of employment including by making payments to a welfare fund or retroactively restore terms and conditions of employment, period. The employer shall also remit the contributions to the welfare fund. We don't have that language here. And the absence, that silence, is what supports the Board's conclusion. Wasn't the original charge maybe I I'm trying to, this is a very kind of convoluted history. Wasn't the original charge against Smokehouse that it wasn't making the payments into the fund? That was one of the charges. Yeah, I mean it was included in the charge. Yes, one of the violations is Smokehouse unlawfully unilaterally ceased making payments into the fund. That is true. But I think where that goes is an argument And they were ordered to make everybody whole. They were ordered to make employees whole. Why would it make sense then to say that they don't have to make the payments into the fund now? Because the Board didn't say that they had to make payments into the fund. These employees have been made whole in that they have been reimbursed for premiums that they had to pay that they wouldn't have had to pay. They've out-of-pocket medical expenses that they wouldn't have to pay that they wouldn't have had to pay but for that cessation of contributions. That is included in the Board's remedy. And that the employees have been made whole or are in the process of being made whole. So there is a remedy to the violation in the case, I guess is what I'm getting to. That's the issue, I guess. That is the issue, but of course the question of whether the Board should have included back payments to a fund as part of its original order is not the question that's before the Court now. It's only whether it did. Counsel, would you meet head-on your opposing counsel's argument that the ruling was illogical and therefore reversible? Sure. Well, I think as you were getting at before, I think given the standard of review here, it really has to be completely unreasonable or rather Local 11's reading of the order has to be compelled in order to reverse the Board in this case. But I think the Board's order is not illogical because it does it says you have to restore the employees restore the terms and conditions of employment to these employees. And what that means is you have to essentially plug them back into the health fund, into the health plan. And then make them whole for the losses they incurred by not having been in the health plan. And that is these premiums, these out-of-pocket medical expenses. All of which were done. No? I'm sorry. That was ordered, the reimbursements for the premiums. Right. All of which was ordered and presumably accomplished. Yes. Right. Right. And so that, the Board's order that is what the Board's order provides as written and that is what has happened. And so that is why the Board's order has meaning in this case. It is not wholly illogical. Counsel, what is your response to opposing counsel's position that the Board's order discounted 50 years of governing practice and rulings that the Board has made? So my answer is that this decision is not a policy decision. It's not a doctrinal holding. It is a textual interpretation of what one particular order means. And we know that for two main reasons. One is that the Board was not purporting to make any changes to its policy. That this is the, that as Local 11 puts it, the standard remedy in such cases. But the other point is that subsequently to this decision, the Board has continued to order back payments to a fund. There's multiple decisions that have come out in the past year. Including, I would note, a case that came out the same day as the decision in this case. So the Board clearly has not moved away from its policy pronouncements. Why wouldn't it do it? I just don't understand. Why wouldn't they do it here? I don't see the sense in it. And Judge Schroeder, I would say that, as I mentioned before, that is a fair question. But I don't think it's the question before this Court, whether it should have included such a remedy. The Board itself acknowledged in its decision here that it may have been inadvertent that it was left out of the 2006 order. But that still means it was left out. No, we have a question of interpretation, I thought you said. Sorry? I thought we were, I thought you, I thought we were talking about interpreting the order. Yes. Interpreting the 2006 order. And why would it, why does the interpretation that the Board has now made make sense in light of its previous history, in light of the positions taken in this litigation before us, and in light of the policy of trying to make them whole and to keep funds from being put in jeopardy? Right. And so it may well be that that comes to a fund is the standard remedy,  I mean, there are no automatic remedies. Every remedy has to be ordered by the Board. And so the reason why it makes sense that it wasn't that the Board's interpretation makes sense is that the order here is different than the order in those other cases, because there is no reference to the fund, to back payments to the fund. And as to this Court's prior decision, if I could clear that up a little bit, there was, as I think Judge Rawlinson was saying before, that, the issue we're talking about today was just not at issue in the, when this case was here at the previous time. So there was no holding in the earlier decision by this Court that kind of dictates the result here. I would also like to point... Well, I understand that. Okay. But the argument was raised by the employer. The argument... And it was supposed to go back into the compliance proceedings. Let me ask you this. Could the Board have if this had challenged it, could the Board have changed the language? No. The Board could not have changed the language. It would have to stay that way. Yes. Because once an order has been enforced by the Court of Appeals, the order is set. The terms of the order are set. One point I would like to make. The Union points out that there are no particular terms and conditions of employment laid out in the order. But there's a difference between when it's terms and conditions of employment for employees, which the Board has said you do not have to kind of set out that means wages, that means hours, that means all of those things. Because it is clear in that situation who the recipient is. The difference here is that there are two different recipients. There's the employees and there's the welfare fund. And I think it makes sense to say that in that situation, when there are multiple recipients, there needs to be that extra degree of clarity when you lay out who is being... So I'm not saying that the Board has to always lay out these specific terms and conditions of employment that must be restored when we're just talking about employees. And that's really the upshot of the Wainstead-Cadillac case, which is discussed in the Board's order. The difference here is when there's that extra, that additional recipient. And the Board never changed its view that employees benefit from back payments to a fund, or that it somehow... they somehow have an interest in the viability of the fund. We don't disagree with any of that. Because, again, I think that's the argument that this was some kind of policy change. But there is not some kind of policy change here, for the reasons we already discussed. What the Board was saying is that, as a factual matter, there are two different recipients, the welfare fund and the employees. And in that situation, the fact that it doesn't mention anything about the welfare fund shows that, or at least supports the Board's reading, that the order does not include the back payments. But the welfare fund is there for the benefit of the employees. Right. Right. We don't disagree with that. It's just, as a factual matter, they are two separate recipients. Um... And so one last point I would say, unless there are further questions, about the previous, the Board's previous, or sorry, this Court's previous decision, is that the employees could not make contributions to the welfare fund because they were too expensive, essentially. It would have been harmful. And there were several arguments. The Court said that those had not been addressed before the Board, and therefore were not properly before the Court. It did mention a couple other arguments that it said could be raised in follow-on compliance proceedings, but none of those arguments, and they're laid out in this Court's decision, go specifically to the welfare fund, as well to the premium payments, and to the out-of-pocket medical expenses, which are indisputably part of the Order. All right. Thank you, Counsel. Thank you. One minute for rebuttal. Thank you, Your Honors. We still don't have an explanation, an adequate explanation, of what retroactively restore terms and conditions is supposed to mean. As Judge Schroeder has pointed out, it makes no sense in the context of a unilateral change case where the only issue was that they had ceased making health and welfare contributions that the Board would not have included at standard remedy. Now, what Counsel is saying is that what that language means, retroactively restore terms and conditions of employment, is that the employer was supposed to plug them back into the health and welfare plan. But that is not retroactive. They would have said, put them back on the health and welfare plan going forward. Instead, what the Board said was retroactively restore terms and conditions of employment. That must mean something. The Board can't come up with any explanation for what that term is supposed to mean, other than to say it was a mistake and inadvertent. And the only explanation that it's provided to the Court is that it would be a going-forward remedy when the remedy is clearly intended to be retroactive. So in order to give meaning to that term, and it must have some meaning, it's important that the Court send the issue back to the Board so they can at least try to provide an explanation for why it's interpreted it the way that it has. We don't see any logical explanation for the Board's interpretation that it's provided to this Court or that it provided in its order. All right. Thank you, Counsel. Thank you to both Counsel. The case just argued is submitted for a decision by the Court. The next case on calendar for argument is Porcina v. United States Citizenship and Immigration Services.
judges: Schroeder, O'scannlain, Rawlinson